Steve W. Berman (*pro hac vice*)
Sean R. Matt (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-mail: steve@hbsslaw.com
E-mail: sean@hbsslaw.com

Mark P. Robinson, Jr. (SBN 054426)
ROBINSON, CALCAGNIE & ROBINSON
19 Corporate Plaza Dr.
Newport Beach, CA 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292
E-mail: mrobinson@rcrlaw.net

*Attorneys for Plaintiffs*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTANCE SIMS and SAMMY RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KIA MOTORS AMERICA, INC., and KIA MOTORS CORPORATION,<br><br>Defendants. | Case No. 8:13-cv-01791-AG-DFM<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE ALLEGATIONS IN THIRD AMENDED CLASS COMPLAINT**<br><br>Hearing: June 23, 2014<br>Time: 10:00 a.m.<br>Court: 10D<br>Judge: Hon. Andrew J. Guilford |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   FACT SUMMARY ............................................................................... 2

III.  LEGAL STANDARDS .......................................................................... 3

IV.   ARGUMENT ....................................................................................... 4

      A.    Plaintiffs Properly Plead Actionable Omissions ....................................... 4

            1.    Plaintiffs' allegations of omission are supported under
                  the foregoing authorities. ............................................................. 5

            2.    Kia's arguments are unavailing. ..................................................... 8

            3.    Plaintiffs' plead their omission claims with sufficient
                  particularity to satisfy Rule 9(b). ................................................. 12

      B.    Plaintiffs Properly Plead Actionable Misrepresentations ..................... 13

            1.    The challenged representations are not "puffery." ...................... 13

            2.    Plaintiffs' plead their misrepresentation claims with sufficient
                  particularity to satisfy Rule 9(b). ................................................. 15

      C.    Plaintiffs State a Claim for Breach of the Implied Warranty of
            Merchantability ................................................................................... 18

      D.    Plaintiffs Now Plead that the Ford Pinto Allegations are Relevant
            to Kia's Knowledge of the Dangers of Defective Gas Tanks, and
            Those Allegations Should Not be Stricken ............................................ 21

      E.    Plaintiffs Have Standing to Represent Class Members with
            Substantially Identical Vehicles ........................................................... 22

V.    CONCLUSION ................................................................................... 24

010399-11  688771 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adler v. Royal Cruise Line*,
 1996 U.S. Dist. LEXIS 22528 (N.D. Cal. Mar. 20, 1996) ...................................14

*Aguilar v. GMC*,
 2013 U.S. Dist. LEXIS 149108 (E.D. Cal. Oct. 16, 2013) ...................................5

*American Suzuki Motor Corp. v. Superior Ct.*,
 37 Cal. App. 4th 1291 (1995) .................................................................19

*Annunziato v. eMachines, Inc.*,
 402 F. Supp. 2d 1133 (C.D. Cal. 2005) .......................................................13

*Apodaca v. Whirlpool Corp.*,
 2013 U.S. Dist. LEXIS 176363 (C.D. Cal. Nov. 8, 2013) ...........................8, 10, 13

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
 2012 WL 2990766 (N.D. Cal. July 20, 2012) ...............................................23

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .......................................................................3, 4, 8

*Belle v. Chrysler Grp., LLC*,
 2013 U.S. Dist. LEXIS 59221 (C.D. Cal. Jan. 29, 2013)......................................5

*Birdsong v. Apple, Inc.*,
 590 F.3d 955 (9th Cir. 2009) ..............................................................19, 21

*Bruno v. Quten Research Inst., LLC*,
 280 F.R.D. 524 (C.D. Cal. 2011)..............................................................23

*Bunch v. Coachella Valley Water Dist.*,
 15 Cal. 4th 432 (1997) .........................................................................9

*Bureerong v. Uvawas*,
 922 F. Supp. 1450 (C.D. Cal. 1996) ..........................................................21

*Cardenas v. NBTY, Inc.*,
 870 F. Supp. 2d 984 (E.D. Cal. 2012) ........................................................24

- ii -

*Carideo v. Dell, Inc.*,
   706 F. Supp. 2d 1122 (W.D. Wash. 2010) ................................................24

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010)....................................................13

*Chemstar, Inc. v. Liberty Mut. Ins. Co.*,
   41 F.3d 429 (9th Cir. 1994) .......................................................................20

*Colucci v. ZonePerfect Nutrition Co.*,
   2012 U.S. Dist. LEXIS 183050 (N.D. Cal. Dec. 28, 2012) ....................24

*Daugherty v. American Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) ......................................................................4

*Doe 1 v. AOL, LLC*,
   719 F. Supp. 2d 1102 (N.D. Cal. 2010)....................................................16

*Donohue v. Apple, Inc.*,
   871 F. Supp. 2d 913 (N.D. Cal. 2012)......................................................23

*Dysthe v. Basic Research, LLC*,
   2011 WL 5868307 (C.D. Cal. June 13, 2011)...........................................22

*In re EasySaver Rewards Litig.*,
   737 F. Supp. 2d 1159 (S.D. Cal. 2010) ....................................................16

*Ehrhart v. Synthes (USA)*,
   2007 U.S. Dist. LEXIS 94760 (D.N.J. Dec. 21, 2007) ...........................21

*Elias v. Hewlett-Packard Co.*,
   950 F. Supp. 2d 1123 (N.D. Cal. 2013).....................................................11

*Falco v. Nissan North Am., Inc.*,
   2013 U.S. Dist. LEXIS 147060 (C.D. Cal. Oct. 10, 2013) .........5, 10, 19

*Falk v. GMC*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007).............................................*passim*

*Freightliner Corp. v. Rockwell-Standard Corp.*,
   2 Cal. App. 3d 115 (1969) ...........................................................................9

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) .....................................................................4

010399-11  688771 V1

*Granito v. International Bus. Mach. Corp.*.
  2004 WL 5249201 (Cal. Super. Ct. Jan. 14, 2004) ................................................. 20

*Grodzitsky v. American Honda Motor Co., Inc.*,
  2013 U.S. Dist. LEXIS 33387 (C.D. Cal. Feb. 19, 2013) .................................... 8, 9

*Harland v. State of Cal.*,
  75 Cal. App. 3d 475 (1977) ......................................................................................... 9

*Hauter v. Zogarts*,
  14 Cal. 3d 104 (1975) ............................................................................................. 13, 14

*Hicks v. Kaufman & Broad Home Corp.*,
  89 Cal. App. 4th 908 (2001) ..................................................................................... 19

*Isip v. Mercedes-Benz USA, LLC*,
  155 Cal. App. 4th 19 (2007) ..................................................................................... 19

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................................. 15

*Keegan v. American Honda Motor Co.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ................................................................... 19

*Lima v. Gateway, Inc.*,
  710 F. Supp. 2d 1000 (C.D. Cal. 2010) ................................................................. 16

*LiMandri v. Judkins*,
  52 Cal. App. 4th 336 (1997) ....................................................................................... 4

*Lloyd v. General Motors Corp.*,
  916 A.2d 257 (Md. Ct. App. 2007) ......................................................................... 20

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ..................................................................................... 23

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................... 13

*Marsikian v. Mercedes Benz USA, LLC*,
  2009 U.S. Dist. LEXIS 117012 (C.D. Cal. May 4, 2009) ................................. 5, 10

*Mexia v. Rinker Boat Co., Inc.*,
  174 Cal. App. 4th 1297 (2009) ................................................................................. 19

- iv -

*Miller v. Ghiradelli Chocolate Co.*,
    912 F. Supp. 2d 861 (N.D. Cal. 2012) ................................................................24

*Mui Ho v. Toyota Motor Corp.*,
    931 F. Supp. 2d 987 (N.D. Cal. 2013) .........................................................8, 10

*Neale v. Volvo Cars of N. Am. LLC*,
    2013 U.S. Dist. LEXIS 43235 (D.N.J. Mar. 26, 2013) ........................................24

*Osborne v. Subaru of Am., Inc.*,
    198 Cal. App. 3d 646 (1988) ..............................................................................14

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
    642 F. Supp. 2d 1112 (C.D. Cal. 2009) ..............................................................16

*Shroyer v. New Cingular Wireless Servs.*,
    622 F.3d 1035 (9th Cir. 2010) ...........................................................................16

*Smith v. Ford Motor Co.*,
    749 F. Supp. 2d 980 (N.D. Cal. 2010) ...............................................................11

*Star Child II, LLC v. Lanmar Aviation, Inc.*,
    2013 U.S. Dist. LEXIS 36476 (D. Conn. Mar. 16, 2013) ....................................14

*In re Toyota Corp. Unintended Acceleration Mktg., Sales Practices, &*
    *Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ........................................................*passim*

*In re Toyota Motor Corp.*,
    790 F. Supp. 2d 1152 (C.D. Cal. 2011) ..............................................................18

*Uyeno v. State of Cal.*,
    234 Cal. App. 3d 1371 (1991) ..............................................................................9

*Vitt v. Apple Computer, Inc.*,
    469 Fed. Appx. 605 (9th Cir. 2012) ....................................................................13

*Von Koenig v. Snapple Bev. Corp.*,
    713 F. Supp. 2d 1066 (E.D. Cal. 2010) ..............................................................16

*Wang v. OCZ Tech. Grp., Inc.*,
    276 F.R.D. 618 (N.D. Cal. 2011) .......................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- v -

*Washington v. Baenziger,*
    673 F. Supp. 1478 (N.D. Cal. 1987)........................................................................12

*Wilson v. Hewlett-Packard Co.,*
    668 F.3d 1136 (9th Cir. 2012) ...............................................................................9

*Won Kyung Hwang v. Ohso Clean, Inc.,*
    2013 U.S. Dist. LEXIS 54002 (N.D. Cal. Apr. 16, 2013)......................................16

*Zucco Partners, LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. 2009) ............................................................................3, 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.    INTRODUCTION

The Court should deny Kia's motion to dismiss and/or strike and uphold Plaintiffs' Third Amended Class Action Complaint, which augments Plaintiffs' omission allegations and identifies additional vehicle models that contain the unsafe gas tank defects.

By pleading with particularity Kia's knowledge, the materiality of the gas tank defects, and Kia's concealment thereof, Plaintiffs properly plead actionable omissions under California law.  Kia had exclusive knowledge of the gas tank defects given that (i) both sound engineering practices and industry custom mandate the use of gas tank straps or shields and metal fuel pump service covers where the pump is accessible through the passenger compartment, (ii) Kia utilized these safer design choices on other models, and (iii) Kia was well aware of the consequences of improperly affixing and protecting the gas tank as a result of its own prior recall of another model and industry-wide knowledge of the hazards of gas tank fires, particularly in light of the Ford Pinto debacle.  Plaintiffs allege a material safety defect because the defect impacts the safety of the cars, and Plaintiffs would have behaved differently had they been aware of the omitted information.  And Plaintiffs sufficiently allege that Kia concealed the defect and that a sufficient causal nexus exists between the alleged defect and the safety issue.  *See infra* Section IV.A.

The Court should also uphold Plaintiffs' misrepresentation-based claims.  The Kia representations that Plaintiffs target – claims that its cars are safety engineered, engineered to ensure everyone's well-being, and designed to protect driver and passengers – are not puffery but, instead, statements that are capable of being reasonably interpreted as statements of objective fact and being proved false.  This is particularly true given that California courts have construed statements about safety liberally in favor of injured consumers and have held promises of safety to be representations of fact.  And Plaintiffs have pled facts with the required particularly to

- 1 -

put Kia on notice of the misrepresentation claims against it, laying out the "who," "what," "where," and "why."  *See infra* Section IV.B.

Turning to the breach of implied warranty claim, California law does not require Plaintiffs to suffer harm from a catastrophic fire in order to bring this claim.  Courts recognize that, if the alleged defect presents a heightened safety risk, a malfunction during the useful life of the product is not required.  This should be the ruling here. *See infra* Section IV.C.

Kia again moves to strike allegations relating to gas tank defects in the Ford Pinto, but these allegations should not again be stricken because Plaintiffs now link the Pinto experience to Kia's knowledge of the particular defects in this case.  *See infra* Section IV.D.

Lastly, Kia provides the Court with no new reasons to prematurely strike allegations relating to vehicles of the same gas tank design as the Soul.  As the Court noted, Plaintiffs may be able to represent owners of other models if differences between the models are not material, and this inquiry is better resolved at the class certification stage.  *See infra* Section IV.E.

## II.    FACT SUMMARY

Sound engineering practice dictates that a car's gas tank should either be strapped to the car or protected by a shield, and that a manufacturer must protect passengers from being engulfed in flames in the event of a collision that breaches the gas tank.  By failing to secure or protect the gas tanks, and by placing a plastic instead of a metal fuel pump cover directly under rear passenger seats, Kia has violated sound engineering practice and sold Defective Vehicles that are "gas bombs" with an unreasonable propensity to explode in the event of a collision.  ¶¶ 17-35.[1]

---

[1] "¶" references paragraphs in Plaintiffs' Third Amended Class Action Complaint. "Defective Vehicles" refers to the following Kia models and model years:  2009-14 Soul, Soul+, Soul!, and Soul Sport; 2006-14 Rio; 2009-14 Forte; 2004-09 Amanti; and 2000-06 Optima.  ¶ 72.

- 2 -

1

2

3

4

5

6

7

These gas tank defects are material safety defects that Kia was under a duty to disclose.  Because Kia was aware of sound engineering practices, knew that other car models (including some of Kia's own models) had either gas tank shields or straps and used metal and not plastic service caps on in-compartment fuel pumps, and well recognized the importance of protecting car drivers and passengers from gas tank fires, Kia should not have shortchanged safety in favor of saving money on these components.  ¶¶ 36-42.

8

9

10

11

12

13

In addition to failing to disclose the defects, Kia made actionable misrepresentations relating to safety, promising drivers that its cars were "DESIGNED TO HELP PROTECT DRIVER & PASSENGERS", contained "advanced safety systems", were "[s]afety engineering for your peace of mind", had "[a]dvanced safety systems designed to expect the unexpected", and that the Soul was "engineered to help ensure everyone's well-being" and a "Top Safety Pick."  ¶¶ 44-49.

14

15

16

17

Plaintiffs seek relief for their economic injuries sustained as the result of Kia's violations of the Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"), false advertising, breach of implied warranty of merchantability, and fraudulent concealment.  ¶¶ 82-134.

18

### III.    LEGAL STANDARDS

19

20

21

22

23

24

25

26

27

In considering a motion to dismiss, the Court must accept Plaintiffs' allegations as true and construe them in the light most favorable to Plaintiffs.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009).  Dismissal is "inappropriate unless the plaintiffs' complaint fails to state a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]"  *Twombly*, 550 U.S. at 555.  Rather, factual allegations simply must "be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

28

*Id.* at 555-56.  Thus, the complaint may proceed "so long as the plaintiff alleges facts to support a theory that is not facially implausible."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008).  Plaintiffs' Third Amended Complaint meets these requirements.

## IV.   ARGUMENT

### A.   Plaintiffs Properly Plead Actionable Omissions

An omission is actionable under the CLRA where it is either "contrary to a representation actually made by the defendant, *or* an omission of a fact [that] the defendant was obliged to disclose."  *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006) (emphasis added).  Many California courts have recognized that omissions are actionable in auto defect cases.

In *Falk v. GMC*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007), the court denied a motion to dismiss CLRA and fraud-by-omission claims based on allegations that the car's speedometer stopped working properly.  Because the plaintiffs did not allege any misrepresentations made by GM about the speedometers, only omissions, the court applied the "*LiMandri* factors" to determine whether the plaintiffs properly alleged a failure to disclose.  *Id.* at 1095.  The California Court of Appeals in *LiMandri v. Judkins*, 52 Cal. App. 4th 336 (1997), outlined four circumstances in which a failure to disclose is actionable:  (i) when the defendant is in a fiduciary relationship with the plaintiff; (ii) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (iii) when the defendant actively conceals a material fact from the plaintiff; and (iv) when the defendant makes partial representations but also suppresses some material fact.  *Id.* at 337.  Only one factor need be present.  *Id.*[2]

The *Falk* court found that plaintiffs properly invoked the second and third *LiMandri* factors, respectively:  (i) plaintiffs sufficiently alleged that GM had

---

[2] Although the relevant claim in *LiMandri* was for common law fraud and deceit based on suppression of fact, *see id.* at 335, and not a claim under the CLRA, federal district courts in California have nonetheless applied *LiMandri* to failure to disclose claims under the CLRA.

- 4 -

exclusive knowledge of the speedometer defect since the plaintiffs did not become aware of the problem until it actually happened to them, and the plaintiffs alleged a material safety defect, that is, that plaintiffs would have behaved differently had he or she been aware of the omitted information; and (ii) the plaintiffs sufficiently alleged that GM concealed the defect by purportedly "fixing" defective speedometers by replacing them with the same exact defective model.  496 F. Supp. 2d at 1095-97.

Many other courts in defective automobile litigation have recently denied motions to dismiss similar allegations based on material omissions and concealment.  *See*, *e.g.*, *Aguilar v. GMC*, 2013 U.S. Dist. LEXIS 149108 (E.D. Cal. Oct. 16, 2013) (allegations of a defective steering column sufficiently pled an omission of material fact where no affirmative misrepresentations were pled, citing *Daugherty*, *Falk*, and *LiMandri*); *Falco v. Nissan North Am., Inc.*, 2013 U.S. Dist. LEXIS 147060 (C.D. Cal. Oct. 10, 2013) (allegations of a dangerous engine defect sufficiently pled an omission of material fact where no affirmative misrepresentations were pled, citing *Daugherty* and *LiMandri*); *Belle v. Chrysler Grp., LLC*, 2013 U.S. Dist. LEXIS 59221 (C.D. Cal. Jan. 29, 2013) (plaintiffs adequately pled a CLRA and UCL claim when they alleged that Chrysler failed to disclose a braking defect caused by premature brake rotor wear); *In re Toyota Corp. Unintended Acceleration Mktg.*, *Sales Practices*, *& Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1172-74 (C.D. Cal. 2010) (plaintiffs adequately pled failure to disclose under the second and third *LiMandri* factors); *Marsikian v. Mercedes Benz USA*, *LLC*, 2009 U.S. Dist. LEXIS 117012, at *12-16 (C.D. Cal. May 4, 2009) (same, citing *Daugherty*, *Falk*, and *LiMandri*).

### 1. Plaintiffs' allegations of omission are supported under the foregoing authorities.

Plaintiffs properly plead the same type of actionable omissions under the second and third *LiMandri* factors as in these recent cases.  With respect to the second factor, Plaintiffs sufficiently allege that Kia had exclusive knowledge of the gas tank defects:

> 19.    Over the years, vehicle manufacturers have made certain design and manufacturing decisions to protect

- 5 -

the gas tank against failure in collisions.  For example, most manufacturers place the gas tank above or in front of the rear axle and not immediately behind the rear bumper (as was done in the early Pinto models), so that the tank cannot be easily penetrated in rear collisions.

20.     Another standard safety device is to shield or strap the gas tank.  Almost all cars sold in the United States have a gas tank that is either protected by a shield or reinforcing straps.

28.     In the Defective Vehicles, Kia failed to shield or strap the gas tank – omitting both of these crucial protections.  It did so despite the fact that Kia has straps in certain models.

31.     Kia is well aware of the need to affix the gas tank by using reinforcing straps.  Kia has used straps on some of its vehicles and issued a recall in 2011 of 2003-2007 model year Spectra's in northern climates where road salt is used.  As the recall notice explained:

THERE IS A POSSIBILITY THAT CORROSION OF THE FUEL TANK STRAPS WHICH HOLD THE TANK MAY OCCUR AS A RESULT OF PROLONGED EXPOSURE TO ROAD SALT. AS A RESULT OF THE CORROSION, ONE OR BOTH STRAPS MAY SEPARATE ALLOWING THE FUEL TANK TO CONTACT THE GROUND AND POSSIBLY DISRUPT THE INTEGRITY OF THE TANK.  **CONSEQUENCE**:  THE FUEL TANK CAN FALL FROM THE VEHICLE AND STRIKE THE GROUND WHICH COULD CAUSE A FUEL LEAK. LEAKING FUEL CAN CREATE A FIRE HAZARD.

38.     As the developer and manufacturer of the Defective Vehicles, Kia had exclusive knowledge of the gas tank defects and the dangers that those defects pose – something that Plaintiffs, as lay persons, would not know, appreciate, or understand without Kia's disclosure.

39.     Kia was well aware of the need to strap its gas tanks and recognized in prior recall notices for other vehicles that failure to properly affix gas tanks to the vehicle may result in the tanks falling and striking the ground which could cause a fuel leak that could ignite.

40.     Kia also knew of the gas tank defects because it knew that, as a matter of sound engineering practice, most other car models had either gas tank shields or straps, including some of Kia's own models.

41.     Kia also knew of the gas tank defects because it knew that, as a matter of sound engineering practice, most other car models that use in-compartment fuel pump service

- 6 -

1    caps have service caps made of metal (and not plastic),
      including some of Kia's own models.

2        42.    Furthermore, as a result of the well-publicized
3    Ford Pinto gas tank explosions from the 1970s, Kia
      engineers were also well aware of the hazards that defective
4    gas tanks pose to vehicle occupants.  The fuel tank in the
      Pintos was positioned behind the rear axle and in front of the
5    rear bumper and suffered from other flaws, such as an
      insufficiently reinforced filler neck that would tear away
6    from the tank in a collision and spill fuel beneath the car.  As
      a result of these defects, the Pinto gas tank had a propensity
7    to burst into flames in even low-speed collisions.  Numerous
      people burned to death in collisions involving the Pinto,
8    leading to many lawsuits in which it was revealed that Ford
      was aware of the dangers presented by the defective tanks
9    but made the decision to sell the Pinto anyway because the
      projected costs to Ford of remedying the defect outweighed
10   Ford's estimate of the total damage payouts that it would be
      exposed to for wrongful deaths and personal injuries.  Kia, in
11   addition to all other auto manufacturers selling vehicles in
      the United States, was well aware of the Pinto experience,
12   and this informed Kia's design of its own vehicles.

13   *See also* ¶¶ 88, 101.

14       Plaintiffs also allege a material safety defect because the defect impacts the

15   safety of the cars, and Plaintiffs would have behaved differently had they been aware

16   of the omitted information:

17       These representations and omissions were material to
      Plaintiffs and the Class.  As reasonable consumers, Plaintiffs
18   and the Class would have behaved differently had Kia
      disclosed the gas tank defects.  If Plaintiffs and the Class had
19   known that the Defective Vehicles had the gas tank defects,
      Plaintiffs and the Class would not have purchased or leased
20   their Defective Vehicles, or would have paid less than they
      did.  Whether the Defective Vehicles have gas tank defects is
21   a fact that a reasonable consumer would consider important
      in selecting a vehicle to purchase or lease.  The gas tank
22   defects are material to consumers because the defects present
      serious safety issues and place the driver and passengers at
23   risk of harm.  Reasonable persons would expect that the
      Defective Vehicles would not have gas tank defects
24   rendering those tanks unsafe, and reasonable persons would
      find the concealed information regarding the gas tank defects
25   material.

26   ¶¶ 89, 102; *see also* ¶¶ 13-14.  It is "a basic rule of California law" that "a fact can

27   give rise to a duty to disclose and an actionable omission if it implicates safety

28

- 7 -

concerns that a reasonable consumer would find material." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 997 (N.D. Cal. 2013); *see also Apodaca v. Whirlpool Corp.*, 2013 U.S. Dist. LEXIS 176363, at *16 (C.D. Cal. Nov. 8, 2013) ("Nondisclosures about safety considerations of consumer products are material.").

With respect to the third, independent *LiMandri* factor, Plaintiffs sufficiently allege that Kia concealed the defect.  ¶ 88 ("Despite this knowledge prior to the manufacture and sale of the Defective Vehicles, defendants uniformly concealed this defect from consumers."); ¶ 101 (same); ¶ 90 ("Defendants also intentionally concealed the gas tank defects, of which Plaintiffs were unaware until about June 2013."); ¶ 129.  While Kia contends that it could not have concealed "readily apparent design choices" that could be revealed by "simple inspection of the vehicle" (Br. at 15), Kia overlooks Plaintiffs' allegations that Kia concealed its knowledge of the dangerous risks presented by those design choices, *see* ¶¶ 88, 101, and that Plaintiffs, as laypersons, would not know, appreciate, or understand the dangers posed by the defects, ¶ 38.

Thus, Kia did not have to make any direct misrepresentations to be held in this suit (even though it did).  It is a reasonable inference to conclude that Kia had a duty to disclose the gas tank defects, thereby raising Plaintiffs' right to relief under the CLRA "above the speculative level."  *Twombly*, 550 U.S. at 570.

## 2.  Kia's arguments are unavailing.

Calling for the Court to make a premature merits determination, Kia contests that it could not have had knowledge of the defect (Br. at 9-10), but the foregoing allegations are accepted as true at this stage in the case.  *Zucco Partners*, 552 F.3d at 989.  After discovery, Kia can contest the issue – although it will be hard pressed to deny such knowledge based on these allegations.  And while Kia relies heavily on *Grodzitsky v. American Honda Motor Co., Inc.*, 2013 U.S. Dist. LEXIS 33387 (C.D. Cal. Feb. 19, 2013), the plaintiffs' knowledge allegations in that case did not involve

1   sound and accepted engineering principles, dangers acknowledged in a prior recall

2   notice for another vehicle, and known hazards posed by a breached fuel tank. Instead,

3   the *Grodzitsky* court focused primarily on plaintiffs' allegations of post-sale customer

4   complaints that were posted on a website unrelated to Honda. *See id.* at *21-22. Even

5   then, *Grodzitksy* is an outlier given *Aguilar*, *Falco*, *Belle*, and *Toyota* – three of which

6   were decided after *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012),

7   which the *Grodzitksy* court found to be a pivot point in the law. *See* 2013 U.S. Dist.

8   LEXIS 33387, at *22-23 n.8.[3]

9        Kia contends that Plaintiffs cannot invoke sound engineering practices as a basis

10  for automaker knowledge, Br. at 11, but courts have long recognized that sound

11  engineering is an objectively identifiable standard proved through expert testimony.

12  *See*, *e.g.*, *Bunch v. Coachella Valley Water Dist.*, 15 Cal. 4th 432, 453 (1997) (expert

13  testimony used to establish sound engineering practice standard in making and

14  managing repairs to flood control system); *Uyeno v. State of Cal.*, 234 Cal. App. 3d

15  1371, 1381 (1991) (expert testified that traffic system was in accordance with sound

16  engineering principles); *Harland v. State of Cal.*, 75 Cal. App. 3d 475, 484 (1977)

17  (expert testimony used to establish that the use of a curve on the bridge was dangerous

18  and contrary to sound engineering practice); *Freightliner Corp. v. Rockwell-Standard*

19  *Corp.*, 2 Cal. App. 3d 115, 117 (1969) (tractor-trailer suspension system install

20  violated sound engineering practice). Kia cites "innumerable design differences

21  among different car makes and models" generally (Br. at 11), but this is not the time to

22  make merits arguments that will, in due course, be the province of expert testimony.

23       Kia also claims that Plaintiffs have not alleged a causal nexus between the

24  alleged defect and the safety issue. Br. at 12-14. More specifically, Kia contends that

25  the alleged defect will only result in harm if a major collision occurs, and that there is

26  an insufficient "nexus" between the alleged defect and the alleged safety hazard when

27  _____

28  [3] *Wilson* discounted the importance of customer complaints submitted after the
    defendant sold the product. *See* 668 F.3d at 1147-48.

- 9 -

1  a harm-triggering collision must first occur.  As support, Kia cites a string of auto

2  cases in which courts refused to dismiss omissions claims but where a major collision

3  was not necessary for the harm to manifest.  *Id.* at 13.

4        Kia misapplies the "sufficient nexus" requirement.  In the cases on which Kia

5  relies, the safety concern cited is the potential for collision, accidents, and injury, even

6  though several events in the chain between defect and potential harm exist.  *See, e.g.*,

7  *Falco*, 2013 U.S. Dist. LEXIS 147060, at *11-12 (failure of timing system can cause

8  the engine's pistons and valves to malfunction, leading to an inability to accelerate or

9  maintain speed, which can expose occupants of the vehicle "to rear end collisions and

10  other accidents caused by the driver's inability to maintain an appropriate speed on the

11  road"); *Marsikian*, 2009 U.S. Dist. LEXIS 117012, at *3 ("The defectively designed

12  AIS is a safety hazard because the flooding of the AIS with water while the vehicle is

13  in operation may cause catastrophic engine and electrical system failure, which in turn

14  may cause traffic accidents."); *Falk*, 496 F. Supp. 2d at 1096 (speedometer defect can

15  result in "inadvertent speeding, driving at unsafe speeds, and accidents"); *see also Mui

16  Ho*, 931 F. Supp. 2d at 997 ("A reasonable consumer would consider [headlamp

17  failure] risk material because of the inherent risks of physical injury in the event of a

18  headlamp-related accident . . . .").  The court in *Apodaca* held that a sufficient – even

19  "tight" – nexus existed between defect and harm (fire) even though "fire would be the

20  extreme result of th[e] causal chain":

21          The Court finds that the FAC adequately alleges a
    design defect, unreasonable safety hazard, and a sufficient

22      nexus.  The FAC explains in great detail the defect, how
    moisture can reach the wiring, how moisture on the wiring

23      can cause overheating, and that overheating can lead to a
    fire. . . .  Given the tight causal relationship alleged in the

24      FAC, the Court does not find Plaintiff Apodaca must wait
    until his dishwasher actually catches fire to allege

25      sufficiently the nexus between the defect and the safety
    hazard.  While catching fire would be the extreme result of

26      this causal chain, the FAC sufficiently alleges its possibility
    as a logical outcome.

27  2013 U.S. Dist. LEXIS 176363, at *23-24.

28

- 10 -

In each of the auto cases cited by Kia, the safety issue was tied to a ***potential*** accident – just like it is here.  And like the plaintiffs in *Apodaca*, Plaintiffs here allege a defect that can result in fire, even though other steps in the causal chain precede this foreseeable end result.  A resulting in-cabin fire that incinerates the vehicle's passengers is a "logical outcome" of the defect and has already occurred in a least one accident.

Thus, for Kia to contend that a major collision somewhere in the causal chain breaks the "sufficient nexus" requirement is unsupported.  Indeed, Kia cannot cite a single case holding that the alleged defect must trigger the collision to have a sufficient nexus with the harm, or, conversely, that an accident cannot be the threshold trigger of the defect that leads to the harm.

*Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980 (N.D. Cal. 2010), and *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123 (N.D. Cal. 2013), are the only two cases that Kia cites in which a court found an insufficient nexus between alleged defect and the safety concern.  But both cases are inapposite.  *Smith*, which was decided on a fully developed fact record on summary judgment, did not involve any potential collision or accident resulting from the defect given that "being unexpectedly stranded" because a car won't start did not raise safety concerns.  749 F. Supp. 2d at 990.  Not so here given the patent safety concerns associated with gas tank fires.  In *Elias*, the plaintiffs failed to explain how an allegedly deficient power supply in laptops could result in fires.  950 F. Supp. 2d at 1137.  Plaintiffs' allegations here do not suffer from any failure to explain exactly how a penetrating in-cabin fire can result from the gas tank defects.

Nor does Kia's hypothetical persuade.  Kia theorizes that, if a major collision does not break the causal nexus, any part of a vehicle could be said to be defective simply because it would be damaged in a collision.  Br. at 14.  This is nonsense.  First, Plaintiffs here allege potential harm to human beings, not to vehicle parts.  Second, a

- 11 -

body part is not defective simply because it is damaged in an accident; put differently, the collision did not trigger the defect that resulted in harm.  In contrast, Plaintiffs allege that, in a collision, the gas tank defects can cause a penetrating cabin fire that would not otherwise erupt as a result of the collision – a natural and direct sequence of events leading to harm.

### 3. Plaintiffs' plead their omission claims with sufficient particularity to satisfy Rule 9(b).

Kia challenges Plaintiffs' omission allegations under Rule 9(b).  Br. at 17-18.  Because a plaintiff bringing fraud by omission claims "will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim," plaintiffs may plead fraud by omission by alternative means."  *Falk*, 496 F. Supp. 2d at 1098-99; *see also Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987) ("Where the fraud consists of omissions on the part of the defendants, the plaintiff may find alternative ways to plead the particular circumstances of the fraud.  For example, a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act.") (citations omitted).

Plaintiffs' omissions allegations satisfy Rule 9(b).  Plaintiffs describe exactly what the defects are:  failure to use a gas tank shield or reinforcing straps, coupled with the use of a plastic fuel pump service cover instead of metal.  *E.g.*, ¶¶ 29, 34.  Plaintiffs explain in detail why these gas tanks are dangerous:  they increase the likelihood that fire will penetrate the rear cabin in a "blow torch" effect in a major collision.  ¶ 34.  And Plaintiffs allege that these are the defects and consequences that Kia should have, but did not, disclose.  ¶¶ 36-42.  Kia is clearly on notice of the precise claims made by Plaintiffs, notwithstanding Kia's feigned confusion (*see* Br. at 17-18).  Kia should have strapped or shielded the gas tanks, and used a metal fuel pump service cover – it is that simple.

- 12 -

Citing *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009), Kia contends that Plaintiffs must specify "where the omitted information should or could have been revealed." Br. at 18. But the courts in *Falk* and *Baenziger* did not apply such a test. Further, *Marolda* is otherwise inapposite because the passage that Kia cites discusses the common law fraud claim, not the CLRA claim, *see* 672 F. Supp. 2d at 1002, and *Marolda* was not a defective products case but one where the plaintiffs simply claimed that the defendants should have disclosed that buying an upgrade to a software subscription would not cancel an existing subscription. *Id.* at 999.

**B.    Plaintiffs Properly Plead Actionable Misrepresentations**

**1.    The challenged representations are not "puffery."**

Kia once again contends that Plaintiffs' misrepresentation-based claims should be dismissed because they are unactionable "puffery." Br. at 6-7. Kia is wrong.

"Puffery" or "puffing" is a seller's statement of its subjective opinion about the merits of a product, as opposed to a factual description of a characteristic of the product. *Hauter v. Zogarts*, 14 Cal. 3d 104, 111-112 (1975). "[T]o be actionable as an affirmative misrepresentation, a statement must make a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Vitt v. Apple Computer, Inc.*, 469 Fed. Appx. 605, 607 (9th Cir. 2012). Factual assertions which could be established or disproved through discovery and, therefore, were not puffery but potentially actionable misrepresentations have included a computer being made of "brand-name components" and having gone through the "most stringent quality control tests" (*Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140-41 (C.D. Cal. 2005)); describing food as "wholesome" where the product had allegedly dangerous additives (*Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010)); and representing that an appliance uses "commercial grade components" (*Apodaca*, 2013 U.S. Dist. LEXIS 176363, at *15).

- 13 -

1    Under California law, "[s]ellers are permitted to puff their products by stating

2 opinions about the quality of the goods so long as they do not cross the line and make

3 factual representations about important characteristics like a product's safety."

4 *Osborne v. Subaru of Am., Inc.*, 198 Cal. App. 3d 646, 660 (1988).  California courts

5 have construed statements about safety **liberally** in favor of injured consumers, and

6 California courts have held "promises of safety to be representations of fact."  *Hauter*,

7 14 Cal. 3d at 112 (holding under common law misrepresentation theory that

8 "Completely Safe Ball Will Not Hit Player" was not puffery); *see also Adler v. Royal*

9 *Cruise Line*, 1996 U.S. Dist. LEXIS 22528, at *32 (N.D. Cal. Mar. 20, 1996) (court

10 explained that, "[h]ad the brochure referred in any manner to cleanliness or safety,

11 even a very general statement might constitute an actionable representation"); *Star*

12 *Child II*, *LLC v. Lanmar Aviation*, *Inc.*, 2013 U.S. Dist. LEXIS 36476, at *4 (D. Conn.

13 Mar. 16, 2013) (statements that "Lanmar Aviation has implemented the most stringent

14 safety standards" and "[y]our Aircraft is in safe hands while based an Lanmar

15 Aviations" were actionable statements of fact and not puffery).

16    In *In re Toyota Corp.*, 754 F. Supp. 2d at 1171, Judge Selna found that the

17 following general representations about safety were actionable and satisfied the Rule

18 9(b) pleading standard:

19 • a commitment to "overall safety gains"

20 • "building safe automobiles is the most important thing we can do"

21 • the "safety and security of driver and passenger has always been an

22   absolute priority for Lexus"

23 • Lexus was "raising the standards on standard safety features"

24 The court held that these "allegations about product safety are more than 'mere

25 puffery' that Toyota's cars were superior to others.  They constitute a campaign by

26 Toyota in which it represented itself as prioritizing (even 'obsessing over') safety."

27 *Id.* at 1177.

28

- 14 -

Toyota's representations are quite similar to the Kia representations that Plaintiffs here allege were false (¶¶ 44-49):

- "DESIGNED TO HELP PROTECT DRIVER & PASSENGERS"
- "advanced safety systems"
- "Safety engineering for your peace of mind"
- "Advanced safety systems designed to expect the unexpected"
- The "Soul is engineered to help ensure everyone's well-being"
- Touting the Soul as a "Top Safety Pick"

Kia makes a specific claim that its cars are safety engineered, engineered to ensure everyone's well-being, and designed to help protect driver and passengers. These statements are capable of being reasonably interpreted as statements of objective fact. And the statements are capable of being proved false given, that, as Plaintiffs allege, the gas tank defects are inherently dangerous. ¶ 52. These are not general, subjective statements like "high quality," "reliable," and "latest technology," which courts consider non-actionable puffery. Order at 11 (citing *Anunziato*, 402 F. Supp. 2d at 1140).[4] The foregoing statements challenged by Plaintiffs are simply ***not*** non-actionable puffery.

### 2. Plaintiffs' plead their misrepresentation claims with sufficient particularity to satisfy Rule 9(b).

Contrary to Kia's contention (Br. at 16-17), Plaintiffs plead their statutory and fraudulent concealment claims with sufficient particularity. Fraud allegations must be "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124, 1126 (9th Cir. 2009) (affirming dismissal for lack of particularity because "[n]owhere in the TAC does Kearns specify what the television advertisements or other sales material specifically stated"). A

---

[4] Plaintiffs concede that statements of "pride of quality" and "world-class quality" (*see* ¶ 45) are non-actionable puffery.

plaintiff satisfies this standard when the plaintiff identifies the specific misrepresentations and why they are false.  *See*, *e.g.*, *Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 U.S. Dist. LEXIS 54002, at *61 (N.D. Cal. Apr. 16, 2013) (Rule 9(b) satisfied "by identifying specific products and statements at issue, as well as when and where she purchased one of Defendants' products."); *In re EasySaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1176 (S.D. Cal. 2010) (Rule 9(b) satisfied where plaintiffs quoted the misrepresentations at issue and "explained why the statements are allegedly false and misleading."); *Doe 1 v. AOL, LLC*, 719 F. Supp. 2d 1102, 1112 (N.D. Cal. 2010) (Rule 9(b) satisfied where plaintiffs "specif[ied] that the misrepresentations were made in AOL privacy policy and other statements posted on AOL's website" and were false because "in contravention to such representations … AOL made confidential data … available to the public[.]").[5]

Judge Selna in *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1172, found that Plaintiffs' satisfied Rule 9(b):

> Plaintiffs have alleged the "who" (Toyota), the "what" (representations that Toyota vehicles are safe); the "where" and "when" (representations were allegedly made in magazine advertisements, press kits, and brochures), and the "why" (Toyota vehicles have a defect that causes SUA). Thus, the FAL, CLRA, and UCL (fraud theory) allegations are properly pled under Rule 9(b).

---

[5] *See also Shroyer v. New Cingular Wireless Servs.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (fraud claims pled with particularity where plaintiffs' "allegations of fraud concern a relatively definite time frame" and he "explains exactly what it is that he believes constituted the fraudulent statements"); *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1007 (C.D. Cal. 2010) (Rule 9(b) met where plaintiffs "identifie[d] the substance of the alleged misrepresentations, in many cases providing direct quotations[,] … describe[d] where these statements occurred" and "describe[d] in detail how the alleged representations were false or misleading."); *Von Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (plaintiffs "establish[ed] the time, place and specific content requirements of Rule 9(b)" where they alleged that during a certain period of time the defendant made certain labeling claims on its drink products, submitted examples of the labels, explained what was misleading about the labels, and alleged that they would not have purchased the products had they known the truth); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1124 (C.D. Cal. 2009) (Rule 9(b) met when alleging when the defendant introduced the drink product, how it was labeled, and what was misleading about the label).

1    The court found plaintiffs' fraudulent concealment claim satisfied Rule 9(b) for

2    similar reasons.  *Id.* at 1190.

3           Plaintiffs here make similar allegations that satisfy Rule 9(b):

4           *The Who*:  Kia:  "In marketing and advertising materials, Kia has

5    consistently promoted the Defective Vehicles as safe."  ¶ 43.

6           *The What*:  Specific, verbatim quotes from Kia's own materials for the

7    Defective Vehicles, all stressing the safety of the Defective Vehicles.  ¶¶ 44-49.

8           *The Where and When*:  In Kia's own brochures and advertisements.

9    ¶¶ 46-49.

10          *The Why*:  Plaintiffs explain why the statements are deceptive:  "Given

11   the gas tank defects…, marketing statements that the Defective Vehicles are

12   safe . . . are false and misleading."  ¶ 50.  And Plaintiffs explain in detail why

13   the gas tanks are defective and dangerous:  the tanks lack crucial protections

14   provided by shielding and strapping and the fuel pump cover is made of plastic.

15   ¶¶ 17-35.

16          These allegations don't leave Kia guessing as to what statements Plaintiffs

17   allege are false, why they are false, and who made them.  For this reason, Plaintiffs

18   have satisfied Rule 9(b).

19          Kia maintains that Plaintiffs have not pled with particularity because they do not

20   explain which specific advertisements they saw.  Br. at 17.  But this is not necessary.

21   What is important is that each Plaintiff alleges that they "saw advertisements for Kia

22   vehicles before [she or he] purchased the Soul, and, although [she or he] does not

23   recall the specifics of many of the advertisements, [she or he] does recall that safety

24   and quality were consistent themes across the advertisements that [she or he] saw,"

25   and that "[t]hese representations about safety and quality influenced Plaintiff's

26   decision to purchase the Soul."  ¶¶ 13-14.  Plaintiffs also allege that they would not

27   have purchased their vehicles and/or paid as much had Kia disclosed the gas tank

28

- 17 -

defects.  *Id.*  These allegations suffice to put Kia on notice that Plaintiffs considered

Kia's representations about safety to be materially important in their decision-making,

and we respectfully request that the Court reconsider its ruling on this issue.  In *In re

Toyota Motor Corp.*, the Court found that similar allegations satisfied Rule 9(b) even

though "none of the Plaintiffs appear to allege that they relied on specific advertising

by Toyota in purchasing or leasing their cars."  754 F. Supp. 2d at 1172 & n.18.

Notably, the plaintiffs in *Toyota* made similar allegations about exposure to general

advertising materials.  *See In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1161

(C.D. Cal. 2011) ("Although she does not recall the specifics of the many Toyota

advertisements she saw before she purchased her Camry, she does recall that safety

and reliability were a consistent theme across the advertisements she saw. Those

representations about safety and reliability influenced her decision to purchase her

Camry.").[6]

## C.   Plaintiffs State a Claim for Breach of the Implied Warranty of Merchantability

Plaintiffs allege that the cars were and are not in merchantable condition and not

fit for the ordinary purpose for which the cars are used because the cars are

> inherently defective as a result of the gas tank defects,
> present unreasonabl[e] safety risks, are not safe for
> occupants . . . .  Moreover, the dangerous defects exist
> without regard to how the driver operates the vehicle.  In
> other words, the defects present an unreasonable danger
> when the driver operates the vehicle in the normal course
> and without driving dangerously.  [¶ 120.]

Relying on the Court's ruling that Plaintiffs did not provide sufficient

allegations that a defect will result in a malfunction during the useful life of the

product, Kia again moves to dismiss Plaintiffs' claim for breach of the implied

warranty of merchantability.  Br. at 18-19.  Kia's central authorities are, once again,

---

[6] To be sure, the Court in *Toyota* noted that Toyota did "not appear to argue that a 9(b) issue exists as to whether Plaintiffs relied on Toyota's representations." *Id.* Nonetheless, the Court addressed the issue, however briefly.

- 18 -

1   *American Suzuki Motor Corp. v. Superior Ct.*, 37 Cal. App. 4th 1291 (1995), and

2   *Birdsong v. Apple*, *Inc.*, 590 F.3d 955 (9th Cir. 2009).  Both cases remain inapposite.

3       As the court in *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908

4   (2001), recognized, *American Suzuki* was "not decided on the ground [that] a defect

5   must have resulted in the product malfunctioning in order to give rise to a suit for

6   breach of warranty."  *Id.* at 922-23.  Instead, *American Suzuki* was "decided on the

7   ground that since there was no history of the products failing they were not, as a

8   matter of law, defective."  *Id.* at 923.  In denying a motion to dismiss an implied

9   warranty claim, the court in *Keegan v. American Honda Motor Co.* also recognized

10  that "the implied warranty of merchantability may be breached by a latent defect

11  undiscoverable at the time of sale."  838 F. Supp. 2d 929, 948 (C.D. Cal. 2012); *see*

12  *also Falco*, 2013 U.S. Dist. LEXIS 147060 (implied warranty claim not dismissed

13  where vehicles provided transportation but had latent defects); *Mexia v. Rinker Boat*

14  *Co.*, *Inc.*, 174 Cal. App. 4th 1297, 1310-11 (2009) (latent defects may breach the

15  implied warranty even when the latent defect was not discovered and reported to the

16  seller within the implied warranty's duration); *Isip v. Mercedes-Benz USA*, *LLC*, 155

17  Cal. App. 4th 19, 27 (2007) ("We reject the notion that merely because a vehicle

18  provides transportation from point A to point B, it necessarily does not violate the

19  implied warranty of merchantability.").

20      Before dismissing a breach of implied warranty claim, courts should allow a

21  record to develop concerning the scope of the defect at issue – especially when the

22  alleged defect is hazardous.  This is what Judge Selna did in *In re Toyota Motor Corp.*,

23  commenting:  "In the present context, the Court finds *American Suzuki* of little

24  persuasive value.  This case is at the pleadings stage, and evidence on the relative

25  occurrence of events of SUA is undefined.  Thus, Defendants' authority does not

26  support dismissal of Plaintiffs' breach of implied warranty claims at the pleadings

27  stage."  754 F. Supp. 2d at 1186.

28

- 19 -

And courts should also consider the ***degree*** of risk that the alleged defect poses. Courts are beginning to recognize that a breach can occur where the risk is heightened and even when no malfunction has occurred or is certain to occur.  For example, in *Lloyd v. General Motors Corp.*, GMC relied on several automobile defect cases – including *American Suzuki* – for the proposition that product malfunction is a required element of implied warranty claims in auto defect cases.  The court disagreed, permitted plaintiffs to pursue the implied warranty claim, distinguished *American Suzuki* and other cases, and explained "that the parties did not argue, and the court never addressed whether the harm alleged, in those cases was sufficiently grave, or whether the likelihood of injury so great, to reach the threshold of the economic loss exception."  916 A.2d 257, 293 (Md. Ct. App. 2007) (construing UCC-based §§ 2-314 and 2-714 of the Maryland Commercial Law, which are identical in all respects to §§ 2314 and 2714 of the California Commercial Code).

At least one lower California court has recognized that "courts implicitly consider the danger or injury that might be caused when a defect manifests itself.  A 1% failure rate may be acceptable for shoes or zippers but unacceptable for parachutes and automobile brakes."  *Granito v. International Bus. Mach. Corp.*. 2004 WL 5249201, at p. 6 (Cal. Super. Ct. Jan. 14, 2004).

Plaintiffs respectfully submit that the inherent danger of the defect must be considered and that a relaxation of the *Hicks* rule is warranted where, as here, the quantum of risk is high.  *See Chemstar*, *Inc. v. Liberty Mut. Ins. Co.*, 41 F.3d 429, 432 (9th Cir. 1994) ("Although California appellate court decisions are persuasive precedent, the [Court] is not bound by them if it believes that the California Supreme Court would decide otherwise.").  An improperly affixed or shielded gas tank is more likely to dislodge or be breached in an accident and, if this occurs, any resulting fire will immediately melt through the plastic fuel pump cover and invade the cabin of the car.  Thus, the cars are not merchantable nor fit for their ordinary purpose of providing

- 20 -

safe transportation.  Plaintiffs plead a viable claim for breach of implied warranty at this pleading stage, and the claim should proceed to discovery.

Regarding *Birdsong*, it is misapplied here.  In *Birdsong*, the product at issue (iPods) could easily be used in a safe manner, and there was no evidence that iPods had a diminished value (nor did plaintiffs allege so).  Thus, the court found that plaintiffs' allegations suggested "only that users have the option of using an iPod in a risky manner, not that the product lacks any minimum level of quality."  590 F.3d at 958.  Unlike the owner-controlled volume levels on an iPod, the gas tank defects here exists ***regardless*** of how the driver operates the vehicle, which lacks a minimum level of quality.  In contrast, the possibility for injury in *Birdsong* was contingent on the poor judgment of the user in adjusting the volume too high.  Not so here, where the possibility for injury is ever present as a result of the defect.  *Birdsong* does not persuade.

**D.    Plaintiffs Now Plead that the Ford Pinto Allegations are Relevant to Kia's Knowledge of the Dangers of Defective Gas Tanks, and Those Allegations Should Not be Stricken**

The Court struck allegations relating to gas tank defects in the Ford Pinto, reasoning that Plaintiffs had not alleged "that Defendants were on notice of the particular defects here because of the Pinto deaths" and that "Defendants were aware of the defects for other reasons."  Order at 16 (Dkt. No. 48).  Kia again moves to strike allegations relating to Ford Pinto gas tank explosions.  Br. at 19-20.

Motions to strike are "generally disfavored."  *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996) (citations omitted).  Motions to strike "should be used sparingly, and generally are 'not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues."  *Ehrhart v. Synthes (USA)*, 2007 U.S. Dist. LEXIS 94760, at *7 (D.N.J. Dec. 21, 2007) (collecting cases).

The Court should not again strike allegations relating to the Pinto because Plaintiffs have addressed the Court's concern by more concretely linking the Pinto experience to Defendants' knowledge of the particular defects here.  Contrary to Kia's contention, Plaintiffs have not repeated those allegations "nearly verbatim."  Instead, the Pinto-related allegations, which appear at paragraph 42, are now found in the section of the complaint that pleads Defendants' knowledge.  Plaintiffs newly allege that, "as a result of the well-publicized Ford Pinto gas tank explosions from the 1970s, Kia engineers were also well aware of the hazards that defective gas tanks pose to vehicle occupants. . . .  Kia, in addition to all other auto manufacturers selling vehicles in the United States, was well aware of the Pinto experience, and this informed Kia's design of its own vehicles."  These allegations are highly relevant to Kia's knowledge of the hazards of defective gas tanks and to Plaintiffs' claims and will neither prejudice Kia nor confuse the issues.  They should not be stricken.

**E.    Plaintiffs Have Standing to Represent Class Members with Substantially Identical Vehicles**

Regarding Plaintiffs' class allegations, Kia previously argued that Plaintiffs only have standing to bring claims for vehicles of the same model and year as the vehicles that Plaintiffs own.  Noting that courts are split as to whether to resolve the issue on standing grounds or wait until presented with a developed fact record on a motion for class certification, this Court appropriately chose the latter course.  The Court noted that Plaintiffs may be able to represent owners of other models if differences between the models were not material, but that it was premature to decide: "these are questions of adequacy, typicality, or predominance of common issues, issues better resolved at the class certification stage."  Order at 8 (citing *Donohue v. Apple*, *Inc.*, 871 F. Supp. 2d 913, 922 (N.D. Cal. 2012)).

Relying heavily on *Dysthe v. Basic Research*, *LLC*, 2011 WL 5868307 (C.D. Cal. June 13, 2011), Kia continues to argue that the Court should trim Plaintiffs' class

1    claims now.  Br. at 21-22.  But the Court already held that its *Dysthe* decision, which

2    was decided on a summary judgment record, does not apply here:

3              *Dysthe* differs from this case in two important respects.
               First, in *Dysthe*, the plaintiff had not purchased the only
4              product that formed the basis of her complaint. . . .  Here, by
               contrast, Plaintiffs have purchased at least some of the
5              vehicles described in the SAC.  The issue is not whether they
               have standing at all, but rather how broadly their claims can
6              extend.  Second, in *Dysthe*, the Court had evidence that the
               two products were distinct. . . .  Here, by contrast, the Court
7              cannot yet evaluate whether the vehicles have the same gas
               tank construction.
8
     Order at 7 (citations omitted).
9
              Plaintiffs have now identified additional models that have a gas tank that is
10
     either not connected to the underside of the vehicle with reinforcing straps or is not
11
     protected by a whole-tank shield or has a plastic fuel pump service cover:  2009-14
12
     Soul, Soul +, Soul!, and Soul Sport; 2006-14 Rio; 2009-14 Forte; 2004-09 Amanti;
13
     and 2000-06 Optima.  ¶ 72.  In arguing that different models may have different fuel
14
     tank characteristics, Br. at 22, Kia merely invites the very fact inquiry that the Court
15
     already decided that it "cannot yet evaluate."  Order at 7.
16
              The Court is not alone, and many courts have found that plaintiffs have standing
17
     to assert claims on behalf of a class encompassing distinct, but similar, products.  In
18
     *Donahue v. Apple., Inc.*, the plaintiff's defect claims invoked various iPhone models,
19
     and the court held that plaintiff had standing to represent a class of individuals who
20
     purchased distinct but similar products.  871 F. Supp. 2d 913, 922 (N.D. Cal. 2012).
21
     In *Bruno v. Quten Research Inst.*, *LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011), the
22
     plaintiff had standing to sue on behalf of purchasers of related products.  Likewise, in
23
     *Astiana v. Dreyer's Grand Ice Cream*, *Inc.*, 2012 WL 2990766, at *13 (N.D. Cal. July
24
     20, 2012), the plaintiffs had standing because they alleged similarity between the
25
     products they did purchase and the products they did not purchase.
26
              The court in *Marcus v. BMW of N. Am.*, *LLC*, 687 F.3d 583, 599 (3d Cir. 2012),
27
     held that when a class includes purchasers of a variety of different products, a named
28

plaintiff that purchases only one product can bring claims on behalf of purchasers of other products if the claims apply uniformly across the different product types.  And in *Neale v. Volvo Cars of N. Am. LLC*, 2013 U.S. Dist. LEXIS 43235, at *26-27 (D.N.J. Mar. 26, 2013), the court rejected the argument that "slight variations in some of the vehicle models" precluded certification where "all of the proposed class vehicles have sunroof drainage systems with a uniform design."  *See also*, *e.g.*, *Miller v. Ghiradelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (citing cases); *Colucci v. ZonePerfect Nutrition Co.*, 2012 U.S. Dist. LEXIS 183050, at *11-14 (N.D. Cal. Dec. 28, 2012); *Carideo v. Dell*, *Inc.*, 706 F. Supp. 2d 1122, 1134 (W.D. Wash. 2010); *Wang v. OCZ Tech. Grp.*, *Inc.*, 276 F.R.D. 618, 632-33 (N.D. Cal. 2011).

Plaintiffs acknowledge that Kia's district court decisions hold to the contrary, and would prohibit a plaintiff from representing purchasers of any product other than that purchased by plaintiff.  But the many cases allowing a plaintiff to sue for a common defect that runs across models have the better of the argument.  *See*, *e.g.*, *Cardenas v. NBTY*, *Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012) ("The court here finds the reasoning of *Bruno* more persuasive than the reasoning provided by the dicta of *Bayer Corp.* and its progeny.").

Plaintiffs seek to represent a class of owners and lessees of Kia vehicles that have the ***same*** gas tank construction as Plaintiffs' Kia Souls.  ¶ 70.  Discovery will quickly reveal the precise contours of the class, and Kia remains free to assert any commonality or typicality arguments in its certification briefing.  Because Plaintiffs seek to represent only those purchasers of cars containing the same defects as the cars they purchased, Kia's standing attack fails.

## V.    CONCLUSION

For the foregoing reasons, Kia's motion should be denied.

- 24 -

DATED:  May 21, 2014                    HAGENS BERMAN SOBOL SHAPIRO LLP


                                        By:   */s/ Steve W. Berman*
                                           Steve W. Berman *(pro hac vice)*
                                        Sean R. Matt *(pro hac vice)*
                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                        1918 Eighth Avenue, Suite 3300
                                        Seattle, WA 98101
                                        Telephone:  (206) 623-7292
                                        Facsimile:  (206) 623-0594
                                        E-mail:  steve@hbsslaw.com
                                        E-mail:  sean@hbsslaw.com

                                        Elaine T. Byszewski (SBN 222304)
                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                        301 North Lake Avenue, Suite 203
                                        Pasadena, CA 91101
                                        Telephone:  (213) 330-7150
                                        Facsimile:  (213 330-7152
                                        E-mail:  Elaine@hbsslaw.com

                                        Mark P. Robinson, Jr., (SBN 054426)
                                        ROBINSON, CALCAGNIE & ROBINSON
                                        19 Corporate Plaza Dr.
                                        Newport Beach, CA 92660
                                        Telephone:  (949) 720-1288
                                        Facsimile:  (949) 720-1292
                                        E-mail:  mrobinson@rcrlaw.net

- 25 -

**CERTIFICATE OF SERVICE**

On May 21, 2014, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

- **Elaine T. Byszewski**
  elaine@hbsslaw.com,andyk@hbsslaw.com,erikas@hbsslaw.com
- **Richard B. Goetz**
  rgoetz@omm.com
- **David R. Kelly**
  david.kelly@bowmanandbrooke.com
- **Carlos M. Lazatin**
  clazatin@omm.com,HBattistoni@OMM.com,pmackoff@omm.com,acalderon@omm.com
- **Sean R. Matt**
  sean@hbsslaw.com
- **P. Kevin Mokhtari**
  kmokhtari@omm.com
- **Mark P. Robinson , Jr**
  mrobinson@rcrlaw.net,banderson@rcrlaw.net,dperkins@rcrlaw.net,dfolia@rcrlaw.net,ctakanabe@rcrlaw.net,cbregman@rcrlaw.net
- **Cary A. Slobin**
  cary.slobin@bowmanandbrooke.com,carol.dorsa@bowmanandbrooke.com,melanie.mccarty@bowmanandbrooke.com

_/s/ Steve W. Berman_
Steve W. Berman

- 26 -

010399-11  688771 V1